[Cite as *Myers v. Hadsell Chem. Processing, L.L.C.*, 2019-Ohio-2982.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lori D. Meyers et al., | : | |
| Plaintiffs-Appellants/<br>Cross-Appellees, | : | |
| | : | |
| v. | | No. 18AP-387 |
| | : | (C.P.C. No. 16CV-10186) |
| Hadsell Chemical Processing, LLC et al., | | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellees, | | |
| | : | |
| [Pike County Sheriff Charles S. Reader, | | |
| | : | |
| Appellee/<br>Cross-Appellant]. | : | |

---

D E C I S I O N

Rendered on July 23, 2019

---

**On brief:** *Ricketts Co., LPA, Richard T. Ricketts*, and *Andrew C. Clark*, for appellants/cross-appellees. **Argued:** *Andrew C. Clark.*

**On brief:** *Lambert Law Office, Randall L. Lambert*, and *Cassaundra L. Sark*, for appellee/cross-appellant. **Argued:** *Cassaundra L. Sark.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiffs-appellants/cross-appellees, Lori D. Meyers and Christopher L. Yerington (collectively, "appellants"), appeal from a judgment of the Franklin County Court of Common Pleas regarding the amount of amercement awarded by the court in granting their motion for amercement against appellee/cross-appellant Charles S. Reader ("Sheriff Reader"), in his official capacity as sheriff of Pike County, Ohio. Sheriff Reader filed a cross-

appeal from the judgment granting the motion for amercement. For the following reasons, we affirm.

## I. Facts and Procedural History

## A. Underlying judgment and attempts to execute on judgment

{¶ 2}   The motion for amercement at issue in the present appeal arises from an attempt to collect on a judgment obtained by appellants in the underlying lawsuit filed against defendants-appellees Hadsell Chemical Processing, LLC ("Hadsell Chemical"), Relevant Compounding, LLC ("Relevant"), Donald A. Hadsell, Hadsell Development, LLC, Robert W. Walton, Jr., Scott D. Evans, Timothy J. Sherman, and two Jane Doe parties. Appellants' complaint, filed October 26, 2016, asserted claims for breach of promissory notes, guarantees, fraud, rescission, promissory estoppel, civil conspiracy, quantum meruit, unjust enrichment, restitution, conversion, and recovery of fraudulent conveyances.  By warrant of attorney, appellants were granted a cognovit judgment of $3,381,532.91 against Hadsell Chemical, Relevant, and Walton, jointly and severally, on certain claims for breach of promissory notes, and $149,230.21 against Relevant and Walton, jointly and severally, on another claim for breach of a promissory note.

{¶ 3}   On November 8, 2016, appellants filed a praecipe for a writ or order of execution with the Clerk of Courts of the Pike County Court of Common Pleas ("Pike County Clerk").  The praecipe directed the Pike County Clerk to issue a writ of execution to the Pike County Sheriff's Office to levy upon and tag certain items as described in an exhibit to the praecipe, located at a specific address in Waverly, Ohio, to satisfy the judgment against Hadsell Chemical, Relevant, and Walton.  The Pike County Clerk issued a writ captioned "writ of possession for personal property" ("First Writ") to the Pike County Sheriff's Office on November 10, 2016.  The First Writ was executed on January 30, 2017 and the Pike County Sheriff's Office seized or tagged various items located at Hadsell Chemical's place of business ("First Levy").

{¶ 4}   On February 8, 2017, Hadsell Chemical filed a motion in the Pike County Court of Common Pleas to quash the First Levy, asserting the First Writ was not timely executed.  The following day, appellants filed a second praecipe for a writ or order of execution with the Pike County Clerk.  That same day, the Pike County Clerk issued a second writ captioned "writ of possession for personal property" ("Second Writ") to the Pike

County Sheriff's Office. The Second Writ was executed on February 16, 2017, and the Pike County Sheriff's Office seized or tagged various items located at Hadsell Chemical's place of business ("Second Levy"). On March 7, 2017, the Pike County Court of Common Pleas entered an agreed order holding that the First Writ was not timely executed and, therefore, the First Levy was invalid. Under the agreed order, Hadsell Chemical waived any objection to the Second Levy. In April 2017, Hadsell Chemical filed a petition for bankruptcy in federal court. Subsequently, on August 23, 2017, the Pike County common pleas court entered an agreed judgment entry providing that the Pike County Sheriff's Office was directed to turn over all of the levied property to the bankruptcy trustee.

## B. Amercement proceedings

{¶ 5}   On January 25, 2017, before the First Writ had been executed, appellants filed a motion for amercement against Sheriff Reader in the Franklin County Court of Common Pleas, requesting that Sheriff Reader be amerced for failure to timely execute the First Writ. The motion requested that Sheriff Reader be amerced in the amount of appellants' judgment against Hadsell Chemical, Relevant, and Walton, and 10 percent of that amount, pursuant to R.C. 2707.01, and in the amount of $1,000 pursuant to R.C. 2707.03. On May 3, 2017, the trial court stayed the case pending the bankruptcy proceedings filed by Hadsell Chemical. On August 8, 2017, the federal bankruptcy court issued an agreed order granting relief from the automatic stay to permit appellants to pursue their amercement remedy. Appellants then filed an amended motion for amercement against Sheriff Reader and the Pike County Sheriff's Office, seeking the same remedy as in the first motion for amercement. Appellants subsequently filed a second amended motion for amercement on October 27, 2017 against Pike County, the Pike County Sheriff's Office, and Sheriff Reader as an individual and in his official capacity, seeking the same remedy.

{¶ 6}   On April 26 and 27, 2018, the Franklin County common pleas court conducted a hearing on the motion for amercement. The trial court heard testimony from Yerington, a deputy clerk with the Pike County Clerk's office, Sheriff Reader, the chief deputy sheriff who previously served as sheriff, and two administrative employees of the Pike County Sheriff's Office. Following the hearing, the trial court issued a decision granting appellants' motion for amercement. The court further found that ordering Pike

County and Sheriff Reader, in his official capacity, to be amerced in the amount of appellants' judgment plus costs and 10 percent of the judgment would exceed the limit set forth in R.C. 2707.03; therefore, the trial court ordered Pike County and Sheriff Reader to be amerced in the amount of $1,000 pursuant to R.C. 2707.03.

## II. Assignments of Error

{¶ 7}    Appellants appeal and assign the following two assignments of error for our review:

> I. The Trial Court committed reversible error when it imposed a monetary limit on this R.C. 2707.01 Amercement Judgment.
>
> II. The Trial Court committed reversible error when it disregarded the statutory subrogation provisions of R.C. 2707.07 and created its own mitigation structure by applying the 2707.03 amercement limit to this 2707.01 amercement.

{¶ 8}  Sheriff Reader has filed a cross-appeal and assigns the following three assignments of error for our review:

> [I.] The trial court erred by finding that the Pike County Clerk's Office issued a Writ of Execution.
>
> [II.] The trial court erred by finding that Sheriff Charles Reader failed to timely execute the Writ that was issued by the Pike County Clerk's Office.
>
> [III.] The trial court erred by finding Sheriff Charles Reader was delinquent in his official capacity when the Clerk's Office failed to issue the correct writ.

## III. Analysis

### A. Sheriff Reader's assignments of error

{¶ 9}   We begin with Sheriff Reader's assignments of error, which challenge the trial court's conclusion that he was subject to amercement for failure to timely execute the First Writ.  In his three assignments of error, Sheriff Reader argues the trial court erred by finding the First Writ was a writ of execution, that he failed to timely execute the First Writ, and that he was delinquent in his official capacity by failing to timely execute the First Writ.

### 1. Challenge to trial court's conclusion that First Writ was a writ of execution

{¶ 10}  In his first assignment of error, Sheriff Reader asserts the trial court erred by concluding the First Writ constituted a writ of execution, arguing that the First Writ was a

writ of replevin. The trial court found the First Writ was clearly a writ of execution and no reasonable public official could have interpreted it to be a writ of replevin. Appellants argue the trial court properly found the First Writ to be a writ of execution because it sought post-judgment recovery of property to satisfy a judgment.

{¶ 11} A writ of execution is a post-judgment remedy. *See* Civ.R. 69 ("Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."); *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 182 (1975), fn. ("The prejudgment remedy of attachment has a postjudgment counterpart -- the writ of execution."). "An execution is a process of a court, issued by its clerk * * * and directed to the sheriff of the county." R.C. 2327.01(B)(1). The execution may be made against the property of a judgment debtor, against the person of a judgment debtor, or for delivery of possession of real property. R.C. 2327.02(A). A writ of execution "shall contain a specific description of the property, and a command to the sheriff or private selling officer to deliver it to the person entitled to the property." R.C. 2327.02(B). The writ of execution against the property of a judgment debtor also "shall command the officer to whom it is directed to levy on the goods and chattels of the debtor." R.C. 2329.09. By contrast, replevin is a pre-judgment remedy for recovery of property. *See* R.C. 2737.02 ("The possession of specific personal property may be recovered in a civil action prior to the entry of judgment, only as provided in sections 2737.01 to 2737.20 of the Revised Code."); *Am. Rents v. Crawley*, 77 Ohio App.3d 801, 803-04 (10th Dist.1991) ("Ohio case law is consistent with the proposition that replevin is solely a prejudgment remedy.").

{¶ 12} Prior to the hearing on the motion for amercement, the parties stipulated that the Pike County Sheriff's Office received the First Writ on November 10, 2016, and that it consisted of three pages: (1) a page captioned "writ of possession for personal property" directing Sheriff Reader to "proceed with the replevin in the within matter" and contact appellants' counsel to arrange for recovery of the personal property described in the attached exhibit, (2) a copy of the praecipe for a writ or order of execution filed by appellants with the Pike County Clerk, and (3) the exhibit to the praecipe for a writ or order of execution describing the property to be tagged.

{¶ 13} Appellants did not provide a writ of execution to be issued by the Pike County Clerk as part of the praecipe for a writ or order of execution; therefore, it was necessary for

the clerk's office to prepare the writ to be issued.  A deputy clerk testified the Pike County Clerk had two template writs that were used when a praecipe did not include a copy of the writ to be issued.  One template was captioned "writ of possession for personal property" and the other template was captioned "writ of possession for real property."  The deputy clerk testified she was trained to use the "writ of possession for personal property" template when a writ of execution was requested but no writ was provided by the requesting party. She testified she was not aware of any instances where the Pike County Sheriff's Office refused to execute a writ based on the form or substance of the writ.  The deputy clerk further testified the Pike County Sheriff's Office did not contact the Pike County Clerk with any questions or requests for clarification after receiving the First Writ.

{¶ 14}  The trial court concluded the First Writ was a writ of execution on personal property and that it complied with the statutory requirements. The First Writ directed Sheriff Reader to levy on certain specified property, as set forth in the attachment to the First Writ, and the praecipe attached to the First Writ identified the judgment debtors, the date of the judgment, and the fact that a copy of the judgment had been filed with the Pike County Clerk.  Moreover, based on testimony presented at hearing, the trial court concluded the practice of the Pike County Clerk was to use the "writ of possession for personal property" template for issuing a writ of execution when a writ was not provided by the party filing the praecipe for writ of execution, and that the Pike County Sheriff's Office understood these to be writs of execution.  Under these circumstances, the trial court reasoned that the First Writ unequivocally provided for post-judgment recovery of property and that no reasonable public official could have construed the First Writ to be a writ of replevin.

{¶ 15}  This court previously considered a sheriff's reasonable interpretation of a writ in *William P. Bringman Co., LPA v. Blubaugh*, 10th Dist. No. 13AP-340, 2013-Ohio-4672 ("*Bringman I*"). In that case, William Bringman obtained a judgment against David Blubaugh and filed a praecipe for writ of execution directing the Franklin County Clerk of Courts to issue a writ of execution to the sheriff of Richland County ordering him to levy on and sell certain property owned by Blubaugh.  *Bringman I* at ¶ 2.  The writ at issue was the third writ of execution that Bringman had requested.  *Id.* at ¶ 6.  The praecipe for the writ requested the sheriff be instructed to complete the same execution process as ordered in

the original execution, with the assets to be seized being described in the original execution, a copy of which was to be attached to the writ. *Id.* However, the writ as issued did not contain a copy of the original writ of execution or any other description of the assets to be seized. *Id.* at ¶ 7. The sheriff served a copy of the writ of execution on Blubaugh, but failed to seize any property. Bringman then filed a motion to amerce the sheriff. The trial court denied the motion to amerce, concluding the Richland County sheriff reasonably interpreted the writ and recognized the risk of seizing the wrong property. *Id.* at ¶ 10. The trial court concluded the sheriff substantially complied with the statute and met the letter and spirit of the law by serving a copy of the writ on Blubaugh, because the writ failed to adequately describe the property to be seized. *Id.* at ¶ 10.

{¶ 16} Noting that the amercement statute must be strictly construed, this court held the trial court did not err by denying the motion to amerce. The court concluded that absent the attachment describing the property to be seized, "[t]he only thing that was clear was that Sheriff Sheldon was ordered to serve the judgment debtor with the writ." *Id.* at ¶ 7. Under these circumstances, the trial court did not err by failing to penalize the sheriff for failure to seize unspecified property. *Id.* at ¶ 12.

{¶ 17} Unlike *Bringman I*, in the present case the First Writ was accompanied by an attachment identifying property to be seized. The attachments to the First Writ also made it clear this was a post-judgment remedy, indicating that a judgment had been obtained and identifying the judgment debtor. Although the first page of the First Writ was captioned "writ of possession for personal property," the contents of the attachments to the writ complied with the statutory requirements for a writ of execution. *See* R.C. 2327.02(B); 2329.09. Thus, unlike *Bringman I*, Sheriff Reader's interpretation of the First Writ as a writ of replevin was not reasonable and he did not substantially comply with the statute by failing to timely execute it. Thus, based on our review of the First Writ and the evidence presented at the hearing, we cannot find the trial court erred by concluding that the First Writ could only be reasonably construed as a writ of execution.

{¶ 18} Accordingly, we overrule Sheriff Reader's first assignment of error.

**2. Challenge to trial court's conclusion that First Writ was not timely executed**

{¶ 19} In his second assignment of error, Sheriff Reader asserts the trial court erred by finding he failed to timely execute the First Writ. R.C. 2329.53 provides that "[t]he officer

to whom a writ of execution is directed shall return such writ to the court to which it is returnable within sixty days from its date."  The parties stipulated the First Writ was received by Sheriff Reader's office on November 10, 2016, and was not served and executed until January 30, 2017, more than 60 days after it was received.  Thus, having concluded the First Writ was a writ of execution and based on the parties' stipulations as to when the First Writ was received and executed the trial court did not err by concluding that Sheriff Reader failed to timely execute the First Writ.

{¶ 20}  Accordingly, we overrule Sheriff Reader's second assignment of error.

### 3. Challenge to trial court's conclusion that failure to timely execute First Writ constituted delinquency

{¶ 21}  In his third assignment of error, Sheriff Reader argues the trial court erred by holding he was delinquent in his official capacity by failing to timely execute the First Writ. Sheriff Reader argues the Pike County Clerk issued the wrong writ and that he should not be subject to amercement due to the clerk's error.  In support of this argument, Sheriff Reader cites this court's decisions in *Bringman I* and *William P. Bringman Co., L.P.A. v Blubaugh*, 10th Dist. No. 14AP-946, 2015-Ohio-2544 ("*Bringman II*").

{¶ 22} As discussed more fully below, amercement under R.C. Chapter 2707 provides a punishment for official delinquency.  *See Moore v. McClief*, 16 Ohio St. 50, 53 (1864).  Two statutes provide for amercement for failure to execute a writ of execution. R.C. 2707.01 provides that an officer shall be amerced "[i]f an execution or order of sale directed to an officer comes to his hands to be executed, and he neglects or refuses to execute it." Similarly, R.C. 2707.03 provides that an officer shall be amerced if he "fails to execute a summons, order, execution, or other process directed to him, or to return it, as required by law, unless he makes it appear, to the satisfaction of the court, that he was prevented by unavoidable accident from so doing."

{¶ 23}  In *Bringman I*, this court affirmed the trial court's denial of a motion to amerce a sheriff, where the trial court concluded that the sheriff complied with the letter and the spirit of the law by merely serving a copy of a writ of execution on the judgment debtor because the writ lacked the attachments describing the property to be seized. Subsequently, in *Bringman II*, this court concluded the clerk of courts' failure to attach the description of assets did not fit within the amercement statute.  *Bringman II* at ¶ 19.

{¶ 24} Unlike the scenario in the *Bringman* cases, in the present case the Pike County Clerk attached the praecipe for writ of execution and the list of property to be seized to the First Writ. While the First Writ was not captioned as a writ of execution, as discussed above, in light of the content and the accompanying attachments, it could only be reasonably construed as a writ of execution. Thus, unlike *Bringman I*, where the trial court found the sheriff met the letter and the spirit of the law by serving a copy of the writ on the judgment debtor and taking no further action, under the current circumstances, Sheriff Reader did not properly execute the First Writ by failing to execute it within 60 days of receiving it. The trial court did not err by finding Sheriff Reader was delinquent in his official capacity by failing to timely execute the First Writ.

{¶ 25} Accordingly, we overrule Sheriff Reader's third assignment of error.

## B. Appellants' assignments of error

{¶ 26} Having concluded the trial court did not err by finding Sheriff Reader was subject to amercement, we now turn to appellants' assignments of error, which challenge the trial court's limitation of the amercement remedy. In their first assignment of error, appellants argue the trial court erred by applying the $1,000 limit contained in R.C. 2707.03 to an amercement under R.C. 2707.01. In their second assignment of error, appellants argue the trial court erred by disregarding the subrogation provision contained in R.C. 2707.07 when limiting appellants' amercement remedy under R.C. 2707.01. Because both of these assignments of error challenge the trial court's imposition of a $1,000 limit on appellants' amercement remedy, we will consider them together.

## 1. Applicable amercement provisions

{¶ 27} Two provisions within Chapter 2707 of the Ohio Revised Code provide for amercement of a sheriff for failure to execute a writ of execution. In relevant part, R.C. 2707.01 provides that "[i]f an execution or order of sale directed to an officer comes to his hands to be executed, and he neglects or refuses to execute it * * * or neglects to return to the proper court an execution or order of sale to him directed on or before the return day thereof * * * such officer shall be amerced in the amount of such judgment, including costs, with ten per cent thereon, to and for the use of the plaintiff or defendant." Similarly, R.C. 2707.03 states that "[i]f an officer fails to execute a summons, order, execution, or other process directed to him, or to return it, as required by law, unless he makes it appear, to the

satisfaction of the court, that he was prevented by unavoidable accident from so doing, he shall be amerced, upon motion and notice, as provided in sections 2707.01 and 2707.02 of the Revised Code, in a sum not exceeding one thousand dollars, and be liable to the action of any person aggrieved by such failure."

**2. History of amercement statutes**

{¶ 28} "To amerce is to punish." *Ryan v. Carter*, 67 Ohio St.3d 568, 569 (1993), citing 1 *Oxford English Dictionary* 396-97 (2d Ed.1989). Amercement as a remedy against a sheriff for failure to execute a writ of execution has existed under Ohio law since at least 1805. 3 Ohio Laws 76-77 (1805). *See also Allen v. Parish* 3 Ohio 187, 196 (1827) (referring to judgment and execution law of 1810 providing for amercement of sheriff who failed to execute writ of execution). The Supreme Court of Ohio has referred to amercement as a "seldom-used remedy" and noted that "it is questionable why this archaic procedure remains"; however, the court further stated that Ohio courts "will enforce R.C. Chapter 2707 until the General Assembly removes it from the books." *Ryan* at 569.

{¶ 29} The present-day amercement statutes, as set forth in R.C. Chapter 2707, can be directly traced to 1853, when the General Assembly adopted the state's first code of civil procedure. 51 Ohio Laws 134-35, 159 (1853). *See also Aumiller, The Recent Amendment to Ohio Revised Code Section 2317.48*, 20 Akron L.R. 47, 50 (1986) ("In 1853, the Fiftieth General Assembly of the state of Ohio enacted the first Ohio Code 0f Civil Procedure, a task which was so well executed that a substantial portion of it remains unchanged to this day."). Chapter 1 of Title 14 of the 1853 Code of Civil Procedure ("1853 Code") provided for executions against the property of a judgment debtor. 51 Ohio Laws 125-26 (1853). Sections 451, 452, 453, 456, and 457 of the 1853 Code set forth the process for amercement of a sheriff or other officer who refused or neglected to execute a writ of execution. 51 Ohio Laws 134-35 (1853). Under section 451 of the 1853 Code, a sheriff who refused or neglected to execute a writ of execution was to be "amerced in the amount of said [judgment] debt, damages and costs, with ten per cent thereon." 51 Ohio Laws 134 (1853). In substance, section 451 of the 1853 Code set forth what is now contained in R.C. 2707.01 and 2707.02. The 1853 Code also contained a group of general provisions applicable to the whole code. 51 Ohio Laws 158 (1853). Chapter 3 of those general provisions set forth the duties of sheriffs and included section 592, which provided that a sheriff "shall execute every

summons, order, or other process, and return the same as required by law; and if he fail to do so, unless he make it appear to the satisfaction of the court, that he was prevented by inevitable accident, from so doing, he shall be amerced by the court in a sum not exceeding one thousand dollars, and shall be liable to the action of any person aggrieved by such failure." 51 Ohio Laws 159 (1853). In substance, this was the general amercement remedy against a sheriff that is now contained in R.C. 2707.03.[1]

{¶ 30} When Ohio's laws were reorganized as the Revised Statutes of Ohio, the amercement provisions previously contained in Sections 451-453 and 456-457 of the 1853 Code were grouped together with the general amercement provision regarding sheriffs contained in Section 592 into an amercement chapter under the heading of special proceedings. *See* Revised Statutes of Ohio Vol. II 1361-63 (1882). This grouping of amercement provisions was retained when the laws were again revised as the General Code of Ohio, where the amercement statutes were placed into a division titled quasi-criminal actions. *See* General Code of the State of Ohio Vol. III 2585-86 (1910). When the laws were again revised into the current Revised Code of Ohio in 1953, the amercement provisions were placed in Chapter 2707, within the context of Title 27, governing courts, general provisions, and special remedies. R.C. 2707.01 through 2707.07 have not been amended by the General Assembly since adoption of the Revised Code in 1953.

**3. Trial court decision on amount of amercement**

{¶ 31} The trial court concluded Sheriff Reader was subject to amercement, but that R.C. 2707.01 and 2707.03 appeared to conflict as to the amount of amercement to be awarded. The court held the statutes could be reconciled by applying the $1,000 limit pursuant to R.C. 2707.03 to an amercement under R.C. 2707.01. Thus, the court reasoned, if an amercement action under R.C. 2707.01 involved a judgment of less than $1,000, the judgment creditor could recover the amount of the judgment plus a 10 percent penalty. If the judgment was more than $1,000 however, the judgment creditor could recover $1,000, consistent with the limitation imposed under R.C. 2707.03. The trial court further reasoned that because R.C. 2707.03 contains a cross reference to the process for amercement under R.C. 2707.01 and 2707.02, it sets forth a specific limitation on

---

[1] The limitation on amercement of a sheriff for failure to execute process directed to him from another county unless adequate fees are deposited with the clerk of courts and the deposit of such fees is indicated on the process was added by the General Assembly in 1868. *See* 65 Ohio Laws 96 (1868).

amercement that prevails over the general amercement provision in R.C. 2707.01. Finally, the trial court concluded it would not be just and reasonable to impose a penalty of over three million dollars against Sheriff Reader. We review de novo the trial court's interpretation of these statutory provisions. *See Hope Academy Broadway Campus v. Ohio State Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 13 ("In reviewing the legislative enactments and interpreting statutory authority, our review is de novo.").

**4. Construction of amercement statutes**

{¶ 32} When construing the language of a statute, a court must "ascertain and give effect to the intention of the General Assembly." *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, ¶ 24, citing *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16 (1968), paragraph two of the syllabus. We look to the language of the statute to determine legislative intent. *Dodd* at ¶ 24, citing *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20. When a statute is clear and unambiguous, and the legislative intent is clearly expressed, it " 'may not be restricted, constricted, qualified, narrowed, enlarged or abridged' under the guise of statutory construction." *Taber v. Ohio Dept. of Human Servs.*, 125 Ohio App.3d 742, 747 (10th Dist.1998), quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948). "It is only where the words of a statute are ambiguous, are based upon an uncertain meaning, or, if there is an apparent conflict of some provisions, that a court has the right to interpret a statute." *Drake-Lassie v. State Farm Ins. Cos.*, 129 Ohio App.3d 781, 788 (10th Dist.1998), citing *Kroff v. Amrhein*, 94 Ohio St. 282 (1916).

{¶ 33} R.C. 2707.01 and 2707.03, when viewed in isolation, are clear and unambiguous. The trial court noted, however, the statutes appear to conflict when applied to the present circumstances, where appellants seek to amerce Sheriff Reader for failure to timely execute the First Writ. R.C. 2707.01 provides for amercement in the amount of the judgment sought to be executed on, including costs and a 10 percent penalty. R.C. 2707.03, by contrast, provides for amercement of up to $1,000. Although equivalent provisions have been part of Ohio law since 1853, we are unaware of any court decisions considering the interaction of the two amercement statutes. Because these statutes appear to overlap and potentially create a conflict, we must rely on the principles of statutory construction to resolve the conflict.

## a. Pari materia reading rule

{¶ 34} The Supreme Court has addressed the rules of statutory construction to be applied in cases of potentially conflicting statutes:

> First, all statutes which relate to the same general subject matter must be read *in pari materia*. And, in reading such statutes *in pari materia*, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict.

(Internal citations omitted.) *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35 (1991).

{¶ 35} Because both R.C. 2707.01 and 2707.03 address an officer's failure to execute a writ of execution directed to him and to return it as required by law, they address the same subject matter and this court must read them in pari materia to determine how to apply the amercement provisions.

{¶ 36} We believe the plain language of both statutes, when read in pari materia, do not conflict. Although R.C. 2707.01 directs that an officer who has failed to timely execute an order shall be amerced in the amount of the judgment, R.C. 2707.03 expressly limits any amercement awarded pursuant to R.C. 2707.01 to $1,000. This reading gives meaning to both statutes and is consistent with the plain language used therein. Therefore, based on the express monetary limitation in R.C. 2707.03, we affirm the trial court's imposition of the $1,000 limitation on the amercement award against Sheriff Reader.

## b. General versus specific canon of statutory construction

{¶ 37} When considering potentially conflicting statutes, we also look to the rules of statutory construction set forth in the Revised Code. R.C. 1.51 provides that where a general provision of law conflicts with a specific provision, "they shall be construed, if possible, so that effect is given to both," but if the conflict is irreconcilable, the specific provision "prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." *See also Simmons*

*v. Ohio Rehab. Servs. Comm.*, 10th Dist. No. 09AP-1034, 2010-Ohio-1590, ¶ 4 (referring to "the canon of statutory construction providing that when there is an apparent conflict between a specific statutory provision and a more general one, the more specific one governs"). The trial court recognized this principle and concluded that R.C. 2707.03 was the specific provision that prevailed over the general provision contained in R.C. 2707.01.

{¶ 38} Although we have determined, applying the in pari materia reading rule, that the statutes do not conflict, even assuming they were irreconcilable, we do not believe R.C. 2707.01 would prevail over 2707.03. As explained above, the modern amercement statutes are derived from provisions in the 1853 Code. The provisions now contained in R.C. 2707.01 through 2707.02 and 2707.04 through 2707.07 were set forth in Sections 451 through 453 and 456 through 457 of the 1853 Code, within a chapter addressing executions against the property of a judgment debtor. The provision now contained in R.C. 2707.03 was set forth in Section 592 of the 1853 Code, in a chapter addressing duties of sheriffs within the context of general provisions applicable to the whole Code. By contrast, the amercement statute that is now R.C. 2707.01 was enacted to provide a remedy when a sheriff failed to execute a writ of execution seeking to execute on the property of a judgment debtor. However, although, Section 592 of the 1853 Code did not initially cross reference 451, in subsequent versions of Section 592, including R.C. 2707.03 at issue here, the statute expressly includes cross references to the provisions authorizing the amercement (here R.C. 2707.01). This cross reference makes it clear that the $1,000 limitation applies to these amercement awards. Therefore, even if the statutes presented an irreconcilable conflict, R.C. 2707.03 is the specific provision and prevails over the more general provision contained in R.C. 2707.01.

### c. Conclusion regarding statutory construction

{¶ 39} Reading R.C. 2707.01 and 2707.03 in para materia and applying the general versus specific canon of statutory construction, and considering the legislative history of the statutes, we conclude the trial court did not err by applying the $1,000 limit under R.C. 2707.03 to appellants' motion for amercement pursuant to R.C. 2707.01.

{¶ 40} Finally, application of the R.C. 2707.07 subrogation does not compel a different conclusion. R.C. 2707.02 merely permits Sheriff Reader to pursue subrogation in the amount he is amerced.

{¶ 41}  Accordingly, we overrule appellants' first and second assignments of error.

## IV. Conclusion

{¶ 42}  For the foregoing reasons, we overrule appellants' two assignments of error and overrule Sheriff Reader's three assignments of error.  Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.